OTTIS R. HADDOCK *v.* STATE OF INDIANA.

[No. 1172S153. Filed July 10, 1973.]

*Mrs. Harriette Bailey Conn,* Public Defender of Indiana, *Carr L. Darden, Sr.,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

HUNTER, J.—This is an appeal from final judgment on a petition for post-conviction relief denying defendant-appellant a new trial. Appellant was convicted of rape and sentenced to life imprisonment on March 12, 1964. His conviction was affirmed by this Court in *Haddock* v. *State* (1965), 246 Ind. 669, 207 N. E. 2d 813. On January 3, 1972, appellant filed a petition for post-conviction relief, which was denied. His motion to correct errors was overruled on August 16, 1972. From the overruling of his motion to correct errors, appellant instituted this appeal.*

In his petition for post-conviction relief, appellant alleged that he had been denied a fair and impartial trial. He bases this conclusion from the following claimed errors:

(1) That he was denied competent counsel in that his attorney conferred with him only twice prior to trial.

(2) That he was denied the opportunity to fully present his view of the facts at the former trial.

Post-Conviction Remedy Rule No. 1, § 5, provides that the "petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence." The trial court ruled that appellant failed to sustain this burden of proof at the post-conviction relief hearing. The evidence presented by appellant at the post-conviction relief hearing consisted of his testimony that his trial counsel conferred with him only twice prior to trial. He further testified that the trial judge at the original trial precluded him from telling the whole story in his own words. In response to this testimony, the State presented appellant's former trial attorney, who testified in part as follows:

Q. "Do you recall this case of your independent recollection at this time?"

---

* Transferred and re-assigned to this office May 31, 1973.

A. "I have some facts, but I didn't remember it."

Q. "Do you recognize the defendant now that you see him, Mr. Haddock?"

A. "I think I do recognize him."

Q. "Do you recall any conversations that you may have had with him prior to the trial of his case?"

A. "No. See at each arraignment, and I guess it is true now, we would pick up about eight to ten paupers who were unable to pay for their counsel, and by the time we would see them all, it would take a considerable amount of time."

Q. "Was it your practice to sit down and try a jury case without ever conferring with them at all?"

A. "No."

Q. "Was it your practice to in fact confer with them and find out the facts that they were able to help you with?"

A. "Correct."

Q. "Would you assume, based upon your recollection of how you handled the matters of pauper cases at that time, that you would assume that you did that in this case?"

A. "Yes."

Q. "Do you recall the details of the case specifically now?"

A. "No, I don't. I know he was a fellow charged with rape and incest, I recall that."

Q. "Do you recall trying it by jury?"

A. "Yes."

Q. "Do you recall anything about a judge who may or may not have—who was the judge, do you recall?"

A. "Judge Fife I believe."

Q. "Do you recall him arbitrarily preventing this witness from testifying?"

A. "No."

Q. "Was that his practice?"

A. "No."

MR. CARTER: "I have no further questions of the Judge."

THE COURT: "Cross-examination."

CROSS EXAMINATION

QUESTIONS BY MR. DARDEN, Defense Counsel

Q. "Judge how many jury cases would you say you have tried?"

A. "In thirty years?"

Q. "Right."

A. "Oh, I would say maybe a hundred at the least."

Q. "How many jury cases have you tried in the last ten years?"

A. "Well, since I have been a Judge five years I have tried about forty."

Q. "Isn't it a fact that you would recall a jury case more so than just a non-jury or a civil case?"

A. "Well, of course, nine years ago is a long time."

Q. "Isn't it a fact also that nine years ago the Criminal Courts here were quite crowded and there was a big backlog of cases for pauper attorneys?"

A. "Well, probably it is still the same way."

Q. "Is it possible too that you could have only spent fifteen minutes with the defendant before trial?"

A. "No, I think he is mistaken on that."

Q. "Whose suggestion was it to have a jury trial?"

A. "I don't remember that, I would imagine that it would have been mine."

Q. "Was Shelley Jean ever subpoenaed to testify in this trial?"

A. "I cannot tell you, I do not remember."

MR. DARDEN: "I think that will be all, Your Honor."

MR. CARTER: "The State rests."

THE COURT: "I think you can step down, . . ."

There is a presumption that the trial counsel appointed or accepted by the trial court is competent. *Kelly* v. *State* (1972), 259 Ind. 414, 287 N. E. 2d 872. This presumption can be overcome only by a showing that the attorney's actions, or inactions, made the proceedings a mockery and shocking to the conscience of the court. *Robbins* v. *State* (1971), 257 Ind. 273, 274 N. E. 2d 255. The trial court was entitled to disbelieve appellant's testimony and to accept the testimony of his trial counsel. *Harrison* v. *State* (1973), 292 N. E. 2d 612. We disagree with appellant's contention that he carried his burden of proof at the post-conviction relief hearing on the issue

of his trial counsel's incompetency and on the question of his alleged curtailed testimony.

The appellant is raising here for the first time the question of the competency of the State's prosecuting witness. He contends that the trial court erred in his original trial by allowing the victim of the rape, an eleven-year-old girl, to testify without first undergoing a psychiatric examination. This issue was not raised in the original appeal of his case. It was not mentioned at the post-conviction relief hearing, nor raised in appellant's motion to correct errors. We refer appellant to *Lipps* v. *State* (1970), 254 Ind. 141, 145, 258 N. E. 2d 622, 625, where this Court said:

> "Since post conviction relief is now available for those whose appeals have been adversely decided on procedural grounds, and since it is absolutely necessary for this Court to maintain an orderly system of procedure and in its operation to insure its integrity and to conserve the time and energy of the Court, we serve notice that procedural defects in appeals which are brought in the future may not be dealt with so leniently. Time and the increasing volume of cases militate against tolerance of the careless practices by too many attorneys who practice before this Court."

In referring to the above quote, we do not mean to cast aspersions upon appellate counsel. They have presented a clear and well-written brief to this Court. However, our Rules of Appellate Procedure must be followed in order to properly insure an orderly system of appeal and review.

We find no error in the post-conviction relief hearing. Therefore, the judgment of the trial court is hereby affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 298 N. E. 2d 418.